# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Robert Johnson, | Civ. No. 10-4056 (RHK/TNL) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| Seth Snedden, *et al.*, | |
| Defendants. | |

---

J. Ashwin Madia, Madia Law LLC, Minneapolis, Minnesota, for Plaintiff.

Lawrence J. Hayes, Jr. Office of the City Attorney, St. Paul, Minnesota, for Defendants.

---

## INTRODUCTION

This action arises out of Plaintiff Robert Johnson's arrest on August 1, 2008, while attending a large party in St. Paul, Minnesota. Johnson asserts three claims in his Complaint: excessive force (Count 1), false imprisonment (Count 2), and false arrest (Count 3), all in violation of his Fourth Amendment rights (and brought pursuant to 42 U.S.C. § 1983). Presently pending before the Court is Defendants'[1] Motion for Summary Judgment (Doc. No. 15) based on qualified immunity. For the reasons that follow, the Motion will be denied.

---

[1] St. Paul police officers Seth Snedden and Chris McGuire.

**BACKGROUND**

It is undisputed, on the night in question, that Johnson was attending a large house party in St. Paul,[2] at which loud music was being played and many people were drinking. It is also undisputed that the Defendant officers were dispatched to the area in response to complaints about noise emanating from the party. From there, however, the parties' stories diverge greatly, and the problem with Defendants' Motion "is that it depends almost entirely on [their] version of the facts." Der v. Connolly, __ F. Supp. 2d __, 2010 WL 2399650, at *4 (D. Minn. June 11, 2010) (Schiltz, J.).

The officers assert that after they arrived at the party, the assembled crowd became hostile at Johnson's behest. They also claim that they observed Johnson holding an open can of beer in his hand, in violation of a St. Paul ordinance banning the public possession of open containers of alcohol. They claim that they ordered Johnson to approach them and he refused, and when the officers moved in he (i) clenched his fists at the officers, (ii) "failed to follow directions from Officer Snedden to come towards [him] and place his hands on top of his head," (iii) "repeated[ly] fail[ed] to follow instructions," (iv) "removed his hands from [his] head . . ., grabbed [Snedden's] hand to pull it off and then turned in towards the officer," and (v) kept attempting to stand up from the ground as the officers were arresting him. (Def. Mem. at 19-20.)

In his deposition, however, Johnson denied each and every one of these assertions. He testified that he was sitting peacefully on the porch when the officers arrived and, when

---

[2] Although the record is somewhat unclear as to the exact number of people present, anywhere from 20 to 40 people were in attendance at the party or close by.

ordered to approach them, he complied. He further testified that as he was walking toward the officers, he was grabbed, thrown to the ground, kicked, kneed, Tasered, and punched, without warning, without having done anything wrong, and without receiving any other commands from the officers:

> Q: Now, in paragraph 12 [of the Complaint], you describe the actions of the officers. The first sentence says, "As Mr. Johnson reached the officers, one defendant grabbed him by the neck and threw him toward the ground." Was there any discussion before that action took place?
>
> A: Not at all.

(Johnson Dep. at 19.)

> Q: At the time that you're on the ground, are the officers asking you to do something?
>
> A: No.
>
> Q: Are they trying to arrest you? Are they trying to handcuff you?
>
> A: No.
>
> Q: Did they ask you to put your hands behind your back so they could handcuff you?
>
> A: No. I went immediately to a submissive point with both arms above my head on the ground. That's how I laid down the entire episode. Which is why everybody said, "Hey, he ain't even doing nothing. He ain't resisting. He ain't resisting."

(Id. at 29-30.)

> Q: The officers say they asked you to walk towards them and you refused. True?
>
> A: That's not true.
>
> Q: One of the officers said – and this would be Officer Snedden – he took out a Taser and ordered you to drop your drink and walk towards the officer.

- 3 -

Did that ever happen?

A:   No.

Q:   Officer Snedden says he came over to you and grabbed you by your left shoulder and ordered you to put your hands on your head. Did that happen?

A:   No.

\*   \*   \*   \*

Q:   Did you grab an officer's left hand and pull it away from you?

A:   No.

Q:   Did Officer Snedden strike you with an open-handed blow to the side of your head?

A:   I question open-handed, but, yes, he struck me with a blow to the side of my head, yes.

Q:   After you were on the ground, did the officer ask you to put your hands behind your back?

A:   No.

Q:   Did you try to stand up?

A:   No.

Q:   The officer claims in his report that you refused to put your hands behind your back and tried to stand up. He then struck you with his knee on your shoulder area. Do you recall anything like that happening?

A:   I recall the knee of me, yes.

Q:   But you deny the other action?

A:   I deny getting up.

\*   \*   \*   \*

Q: The report says you continued to try to get up. Is that true?

A: Not true.

Q: Did you tuck your hands under the front of your body instead of allowing the officer to handcuff you?

A: No.

(Id. at 61-62.)

Q: When the officer told you to "come here," how did you know he was referring to you?

A: He pointed at me. "You come here."

Q: And at that time you were sitting on the porch?

A: Yes.

\*   \*   \*   \*

Q: How did you react when he told you to "come here"?

A: I got up and proceeded to walk toward him.

\*   \*   \*   \*

Q: And did he immediately then grab you as you described and throw you to the ground?

A: Yes.

Q: How long did it take him to get you on the ground once he grabbed you?

A: It seemed like seconds []. One swooping motion.

Q: Other than the one command where the officer told you to "come here," did any of the officers give you any other commands that you can recall?

A: No.

- 5 -

Q: Did you disobey any of the officers' orders that day?

A: No, I did not.

Q: And how many orders do you recall them giving you?

A: "Come here." That's one. Once the statement of "stop resisting," because of my response of "Look, look, I ain't doing nothing –" and we all know it happened when I was laying flat out, face down.

Q: And were you saying that when you were on the ground you put your arms straight in front of you with your palms down on the ground?

A: Yes, sir.

Q: So they could see both of your arms were fully extended and they could see there was nothing in them?

A: Exactly.

Q: Were you resisting arrest?

A: No, I was not.

Q: Did you resist the officers in any way?

A: No.

Q: Did you try to get up?

A: No.

Q: Did you stick your hands underneath your body so they couldn't get them?

A: No.

(Id. at 69-71.)

Furthermore, Johnson denied "heckling" the officers, yelling unsavory comments at them, or instigating the crowd against them. (Id. at 60, 73-74.) He also denied that the

- 6 -

crowd became unruly, menaced the officers, or made any threatening gestures toward them.  (Id. at 26-27.)

Johnson was released a few hours after his arrest and went to Regions Hospital, complaining of pain in the side where he was kicked.  (Id. at 37.)  Hospital records indicate that a chest X-ray was performed and no pneumothorax (collapsed lung) or "obvious" rib fracture was evident.  (Hayes Aff. Ex. 2.)  Two days later, a radiologist again reviewed the X-ray and found "[n]o evidence of fracture."  (Id. Ex. 3.)  According to Johnson, however, he was told by Regions Hospital staff that he *did* have a fractured rib, which was (supposedly) confirmed by an ultrasound.  (Johnson Dep. at 41-42.)  There are no documents in the record indicating that an ultrasound was performed. Nevertheless, Johnson has submitted a radiology report – dated approximately four weeks after the incident – showing "a mildly displaced fracture involving the anterolateral margin of the distal 9th rib on the right."  (Johnson Aff. Ex. 1.)[3]

On September 27, 2010, Johnson commenced the instant action against the arresting officers under 42 U.S.C. § 1983.  He asserts three claims in his Complaint:  excessive force (Count 1), false imprisonment (Count 2), and false arrest (Count 3), all in violation of his Fourth Amendment rights.  Discovery is complete, and Defendants now move for summary judgment on the ground of qualified immunity.  The Court held a hearing on the Motion on January 19, 2012, and it is ripe for disposition.

---

[3] This report was not part of the record at oral argument, although Defendants obtained it in discovery and asked Johnson about it during his deposition.  Accordingly, the Court granted Johnson leave to submit the report into the record following oral argument.  (See Doc. No. 26.)

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

In determining whether a government official is entitled to qualified immunity, the Court must conduct a two-part inquiry. First, it must assess whether the facts alleged, when viewed in the light most favorable to the plaintiff, show that the challenged conduct violated a constitutional right. If a violation could be established based on those facts, the Court must then determine whether the constitutional right at issue was clearly established on the date in question. E.g., Avalos v. City of Glenwood, 382 F.3d 792, 798 (8th Cir. 2004) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Here, on the date in question it

was clearly established that (1) an arrestee enjoyed the right to be free from excessive force during an arrest, e.g., Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005), and (2) police officers could not make a warrantless arrest without probable cause, e.g., Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005). The issue, therefore, is whether the facts alleged by Johnson, when viewed in the light most favorable to him, show that the challenged conduct violated his constitutional rights. The answer to that question is "Yes" for both the (allegedly) excessive force and the (allegedly) unlawful arrest. Simply put, if a jury were to believe Johnson's version of events – however difficult it might be to believe – the officers would not be entitled to qualified immunity.

As for excessive force, police officers may not throw to the ground and punch, kick, knee, and Taser a fully compliant individual, who has committed no crime, who they have no reason to suspect is armed, and in circumstances in which they should not perceive a threat to their safety. See, e.g., Johnson v. Carroll, 658 F.3d 819, 826-27 (8th Cir. 2011) (genuine issue of fact whether officers used excessive force by twice grabbing plaintiff, throwing her to the ground, and spraying her with mace despite fact that she interfered with officers attempting to arrest her nephew, as she did not engage in a "severe or violent offense," "posed at most a minimal safety threat to the officers and was not actively resisting arrest or attempting to flee," and did not push officers or threaten them); Brown v. City of Golden Valley, 574 F.3d 491, 496-97 (8th Cir. 2009) (affirming denial of qualified immunity to officers who Tasered plaintiff, grabbed her hair, yanked her from car, grabbed her arms and bent them behind her back when she had not engaged in a "severe or violent crime," "posed at most a minimal safety threat . . . and was not actively resisting arrest or

attempting to flee," and "did not threaten the officers, verbally or physically"). "While a jury may credit the officers' assertions and disbelieve Johnson at trial, 'it is not [the Court's] function to remove the credibility assessment from the jury.'" Johnson, 658 F.3d at 827 (quoting Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002)).

Defendants argued in their brief (and asserted more forcefully at oral argument) that Johnson suffered no more than *de minimis* injuries from their (alleged) conduct. (Def. Mem. at 23-24.) As the Eighth Circuit recently noted, "over the course of more than fifteen years, . . . it . . . remain[ed] an open question in this circuit whether an excessive force claim requires some minimum level of injury." Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011). Chambers laid this issue to rest, making clear that even a *de minimis* injury can support an excessive-force claim. But "[g]iven the state of the law" before that decision, a reasonable police officer "could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment." Id. In other words, it was not clearly established pre-Chambers that an officer violated an arrestee's rights, no matter how much force he applied, if he caused only *de minimis* injuries. Id. at 908-09.

Chambers does not help Defendants, however, because a jury could conclude from the evidence that the officers' conduct resulted in (among other things) a fractured rib, which is more than a *de minimis* injury. See Hudson v. McMillian, 503 U.S. 1, 10 (1992) (bruises, swelling, loosened teeth, and cracked dental plate were more than *de minimis* injuries for purposes of Eighth Amendment claim); cf. Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) (noting that "relatively minor scrapes and bruises and the

less-than-permanent aggravation of a prior shoulder condition" are *de minimis* injuries). The Court recognizes that Johnson's evidence of a rib fracture – an X-ray report four weeks after the incident – is somewhat dubious. But the Court does not believe it would be unreasonable for a jury to conclude from that report that Johnson suffered a rib fracture on the night in question. The weight to be given the report, and whether it is adequately connected to the events surrounding Johnson's arrest, are questions for the jury to resolve.

Similarly, the Court cannot conclude Defendants are entitled to qualified immunity on Johnson's unlawful-arrest claims.[4] The officers assert that there existed probable cause to conclude Johnson had violated Minnesota's "obstructing legal process" and "disorderly conduct" statutes (Minn. Stat. §§ 609.50, 609.72) by disobeying their commands, grabbing them, and inciting the crowd. (Def. Mem. at 26-30.) As noted above, however, Johnson denies that he engaged in such conduct. The officers also argue that Johnson violated a city noise ordinance by playing music too loudly at the party, but he testified that neither the house nor the car from which the music was emanating belonged to

---

[4] In Baker v. McCollan, 443 U.S. 137, 145-46 (1979), the Supreme Court recognized that "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles. Just as medical malpractice does not become a constitutional violation merely because the victim is a prisoner, *false imprisonment does not become a [constitutional] violation . . . merely because the defendant is a state official*." (emphasis added) (internal quotation marks, alteration, and citation omitted). Hence, unlike a claim for false *arrest*, a § 1983 false-*imprisonment* claim arises only in limited circumstances that do not appear in the instant case. See, e.g., Davis v. Hall, 375 F.3d 703, 717 (8th Cir. 2004) (false imprisonment actionable under § 1983 where plaintiff alleged "that his prolonged incarceration after being ordered released violated his right to liberty, which is protected by the Fourteenth Amendment's guarantee of due process of law"). Yet, Johnson has asserted claims for *both* false imprisonment (Count 2) and false arrest (Count 3), which may be improper for the reasons above. All parties treat the former claim as derivative of the latter, however, with each turning on whether there existed probable cause for Johnson's arrest. (See Def. Mem. at 26-30; Mem. in Opp'n at 18-20.) Accordingly, the Court follows their lead and addresses the two claims together.

him.  (Johnson Dep. at 16-17.)[5]  Finally, the officers argue that Johnson violated a St. Paul ordinance banning the public possession of open containers of alcohol.   In fact, they go so far as to argue that he "has not denied that he had a can of beer in his hand at the time he interacted with" them.  (Reply at 9-10.)  The record belies that assertion.  (See Johnson Dep. at 60 ("Q:  The officers claim you were first near the vehicle in the street, the SUV I'm assuming, with a beer in your hand.  Is that true?  A:  That's inaccurate.").)

## CONCLUSION

At bottom, fact disputes preclude summary judgment in this case, because under Johnson's version of events the officers are not entitled to qualified immunity.  See, e.g., Kukla, 310 F.3d at 1049 ("[I]f the arrestee challenges the officer's description of the facts and presents a factual account that would not permit a reasonable officer to make an arrest, then there is a material factual dispute precluding summary judgment."); Weiner v. Lappegard, Civ. No. 04-630, 2005 WL 1155943, at *4 (D. Minn. May 16, 2005) (Kyle, J.) ("[I]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.").  Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 15) is **DENIED**.[6]

Dated: January 30, 2012                              s/Richard H. Kyle
                                                     RICHARD H. KYLE
                                                     United States District Judge

---

[5] Other evidence in the record calls into question who actually owned the car.  (See Elyse Jackson Aff. ¶¶ 10-11; Beauford Jackson Aff. ¶ 6.; Keyonna Thomas Aff. ¶ 7.)

[6] The Court reminds the parties that this action is on the May 2012 trial calendar, and they should be prepared to try this action sometime that month.